## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NIVAGEN PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-846-GBW |
| | ) | |
| AMNEAL PHARMACEUTICALS, INC., | ) | **JURY TRIAL DEMANDED** |
| AMNEAL PHARMACEUTICALS of | ) | |
| NEW YORK, LLC, AMNEAL | ) | |
| PHARMACEUTICALS LLC, AMNEAL | ) | **PUBLIC VERSION** |
| PHARMACEUTICALS PVT LTD., and | ) | |
| AMNEAL EU, LTD. | ) | |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INFRINGEMENT OF U.S. PATENTS 11,813,291 AND 11,925,661

OF COUNSEL:

Shashank Upadhye
Yixin H. Tang
Brent Batzer
UPADHYE TANG LLP
109 Symonds Dr. #174
Hinsdale, IL 60522
Tel:  (312) 327-3326

Bindu A. Palapura (#5730)
Andrew M. Moshos (#6685)
Malisa C. Dang (#7187)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
bpalapura@potteranderson.com
amoshos@potteranderson.com
mdang@potteranderson.com

Dated:  August 9, 2024
11692610 / 23316.00002
Public Version Dated: August 16, 2024

*Attorneys for Plaintiff Nivagen Pharmaceuticals, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NIVAGEN PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-846-GBW |
| | ) | |
| AMNEAL PHARMACEUTICALS, INC., | ) | **JURY TRIAL DEMANDED** |
| AMNEAL PHARMACEUTICALS of | ) | |
| NEW YORK, LLC, AMNEAL | ) | |
| PHARMACEUTICALS LLC, AMNEAL | ) | **PUBLIC VERSION** |
| PHARMACEUTICALS PVT LTD., and | ) | |
| AMNEAL EU, LTD. | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF**
**PATENT INFRINGEMENT OF U.S. PATENTS 11,813,291 AND 11,925,661**

Nivagen Pharmaceuticals, Inc. ("Nivagen" or "Plaintiff") files this First Amended

Complaint for Declaratory Judgment of Patent Infringement against: (1) Amneal Pharmaceuticals

Inc. ("APINC"); (2) Amneal Pharmaceuticals of New York LLC ("APNY"); (3) Amneal

Pharmaceuticals LLC ("APLLC"); (4) Amneal Pharmaceuticals Pvt. Ltd. ("AMPVT"); and (5)

Amneal EU Ltd. ("AMEU") (collectively "Defendants" or individually as "Defendant"), and

alleges, upon information and belief, as follows. This is an action for a declaratory judgment of

patent infringement for Defendants' recently FDA approved drug product, potassium phosphates

in sodium chloride, under NDA #21-8343 ("Amneal Product").

## THE PARTIES

1.    Nivagen Pharmaceuticals, Inc. is a corporation organized and existing under the laws

of the State of Delaware, with its principal place of business at 3050 Fite Circle, Suite 100,

Sacramento, CA 95827.

2. Upon information and belief, APINC is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 400 Crossing Blvd., Bridgewater, NJ 08807. Upon information and belief, APINC is in the business of developing, manufacturing, marketing, distributing, and selling pharmaceutical products in the United States.

3. Upon information and belief, AMEU is a limited liability company organized and existing under the laws of Ireland and has its principal place of business at Cahir Road, Cashel, Co. Tipperary, E25 ZD51, Ireland. Upon information and belief, AMEU is a pharmaceutical company engaged in the research, development, production, distribution, and sale of pharmaceutical products throughout the United States, including sales within this judicial district. Further, according to the FDA approval letter dated July 26, 2024 ("FDA approval letter", attached hereto as Exhibit D), AMEU is the NDA holder or owner of the Amneal Product's FDA approval.



**FDA U.S. FOOD & DRUG** ADMINISTRATION

NDA 218343

**NDA APPROVAL**

Amneal EU, Limited
c/o Amneal Pharmaceuticals of New York, LLC
Attention: Candis Edwards
Senior Vice President
50 Horseblock Road
Brookhaven, NY 11719

Dear Candis Edwards:

Please refer to your new drug application (NDA) dated September 28, 2023, received September 28, 2023, and your amendments, submitted pursuant to section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act (FDCA) for Potassium Phosphates in 0.9 % Sodium Chloride Injection.

4.    Upon information and belief, APLLC is a limited liability company organized and existing under the laws of Delaware and has its principal place of business at 400 Crossing Blvd., Bridgewater, NJ. Upon information and belief, APLLC is wholly owned by APINC. Upon information and belief, APLLC is in the business of developing, manufacturing, marketing, distributing, and selling pharmaceutical products in the United States.

5.    Upon information and belief, APNY is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 50 Horseblock Road, Brookhaven, New York 11719. Upon information and belief, APNY is the U.S. Agent for AMEU. Upon information and belief, APNY is a pharmaceutical company engaged, among other things, along and/or in concert with other Amneal Defendants, in the development, production, distribution, and sale of pharmaceutical products throughout the United States, including sales within this judicial district.

6.    According to the FDA approval letter: (i) AMEU is the NDA holder of NDA #21-8343; and (ii) APNY is the registered agent on behalf of AMEU. According to the FDA approved label ("FDA approved label, attached hereto as Exhibit E"), the Amneal Product will be distributed by APLLC.

7.    Upon information and belief, AMPVT is a corporation organized and existing under the laws of India, having its principal place of business at Plot No. 15, PHARMEZ Special Economic Zone, Sarkhej-Bavia N.H., No. 8A, Vil.: Matoda, Tal.: Sanand Ahmedabad, Gujarat 382213, India. Further, AMPVT is a pharmaceutical company engaged, among other things, in the manufacturing, packaging, testing, distribution, and sale of pharmaceutical products sold in and imported into the United States. According to the FDA approved label, the Amneal Product will be manufactured by AMPVT and distributed by APLLC. Furthermore, according to the Rule 7.1

Corporate Statement (D.I. 15) filed in *Par Pharmaceutical, Inc. v. Amneal Pharmaceuticals Co. GmbH et al*, C.A. No. 19-712 (D. Del.) that, "Amneal Pharmaceuticals Pvt. Ltd. is a wholly owned subsidiary of Amneal Singapore Pvt. Ltd. Amneal Singapore Pvt. Ltd. is a wholly owned subsidiary of Amneal Pharmaceuticals Holding GmbH, which is an indirect wholly owned subsidiary of Amneal Pharmaceuticals LLC. Amneal Pharmaceuticals LLC has one parent company, Amneal Pharmaceuticals, Inc."

### JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this case under 28 U.S.C. §§1331, 1338(a), and 2201, including Section 2201(a).

9.    This Court has personal jurisdiction over Defendants because Defendants conduct business in and will commit, jointly or individually, acts of patent infringement in this District and the State of Delaware and have established minimum contacts with this forum state such that the exercise of jurisdiction over Defendants would not offend the traditional notions of fair play and substantial justice.

10.    Defendants are subject to this Court's general and specific jurisdiction pursuant to due process and/or the Delaware Long Arm Statute due at least to Defendants' substantial business in the State  of Delaware and this District, including through its imminent infringing activities, because Defendants regularly do and solicit business herein, and/or because Defendants have engaged in persistent conduct and/or have derived substantial revenues from goods and services provided in the State of Delaware and this District.

11.    Defendants transact substantial business with entities and individuals in the State of Delaware and this District, by, among other things, introducing and selling pharmaceutical

products into the stream of commerce with the knowledge and expectation that they will be sold in the State of Delaware and this District.

12. APLLC is subject to personal jurisdiction in Delaware because, among other things, it has purposely availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. APLLC is a company organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware. It therefore has consented to general jurisdiction in Delaware. In addition, on information and belief, APLLC develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware and therefore transacts business within the State of Delaware related to Plaintiff's claims, and/or has engaged in systematic and continuous business contacts within the State of Delaware.

13. Upon information and belief, APLLC has availed itself of the legal protections of Delaware by filing counterclaims affirmatively seeking relief in other prior actions in this Court, including in *HQ Specialty Pharma Corp. v. Amneal Pharmaceuticals LLC*, C.A. No. 23-1153 (D. Del); *Bayer Healthcare LLC et al. v. Amneal Pharmaceuticals LLC et al.*, C.A. No. 21-1770 (D. Del.); *CMP Development LLC v. Amneal Pharmaceuticals LLC*, C.A. No. 21-549 (D. Del.); *Silvergate Pharmaceuticals, Inc. v. Amneal Pharmaceuticals LLC*, C.A. No. 20-1255 (D. Del.); *Intercept Pharmaceuticals, Inc. et al. v. Amneal Pharmaceuticals LLC et al.*, C.A. No. 20-1154 (D. Del.); *Silvergate Pharmaceuticals, Inc. v. Amneal Pharmaceuticals LLC*, C.A. No. 19-678 (D. Del.); *Almirall, LLC v. Amneal Pharmaceuticals LLC*, C.A. No. 19-658 (D. Del.); *Genentech, Inc. et al. v. Amneal Pharmaceuticals LLC et al.*, C.A. No. 19-190 (D. Del.); *Genentech, Inc. et al. v.*

*Amneal Pharmaceuticals LLC et al.*, C.A. No. 19-195 (D. Del.); and *Noven Pharmaceuticals, Inc. v. Amneal Pharmaceuticals LLC*, C.A. No. 18-699 (D. Del.).

14.    APINC is subject to personal jurisdiction in Delaware because, among other things, APINC, itself and through its wholly-owned subsidiaries APLLC, AMEU, APNY, and AMPVT, has purposefully availed itself of the benefits and protections of Delaware's laws such that it should reasonably anticipate being haled into court here. APINC is a corporation organized and existing under the laws of the State of Delaware, is qualified to do business in Delaware, and has appointed a registered agent for service of process in Delaware. It therefore has consented to general jurisdiction in Delaware. Further, on information and belief, APINC, itself and through its wholly owned subsidiary APLLC, develops, manufactures, imports, markets, offers to sell, and/or sells generic drugs throughout the United States, including in the State of Delaware, and therefore transacts business within the State of Delaware, and/or has engaged in systematic and continuous business contacts within the State of Delaware. In addition, APINC is subject to personal jurisdiction in Delaware because, on information and belief, it controls APLLC and therefore the activities of APLLC in this jurisdiction are attributed to APINC.

15.    Upon information and belief, APINC has availed itself of the legal protections of Delaware by filing counterclaims affirmatively seeking relief in other prior actions in this Court, including in *Bayer Healthcare LLC v. Amneal Pharmaceuticals LLC et al.*, C.A. No. 21-1770 (D. Del.), and *Otsuka Pharmaceuticals Co. Ltd. v. Amneal Pharmaceuticals, Inc. et al*, C.A. No. 20-1297 (D. Del.).

16.    Upon information and belief, AMEU will actively commit acts of infringement or induce others to commit acts of infringement in this District because the Amneal Product NDA is

owned by AMEU and the Amneal Product will be sold in this District under the federal FDA approved NDA.

17.   Upon information and belief, APNY is the registered agent for AMEU, APNY is wholly owned by APINC, and APNY will directly infringe or induce others to commit acts of infringement in this District. As the registered agent for AMEU, APNY is responsible for FDA actions on behalf of AMEU, APINC, and APLLC. APNY is a corporation organized under the laws of Delaware.

18.   Upon information and belief, AMPVT will manufacture the Amneal Product in violation of one or more claims of the patents-in-suit and will induce others to commit acts of infringement in this District.

19.   Venue is proper in this District as to Defendants pursuant to at least 28 U.S.C. §§1391(c)(2), (3), and 1400(b). Defendants are incorporated and reside in Delaware. AMEU is an Irish company and is subject to venue in this District.

20.   Furthermore, venue is proper in this Judicial District pursuant to 28 U.S.C. §§1391(b), 1391(c) and 1400(b) because, among other things, Defendants are subject to personal jurisdiction in this Judicial District by regularly conducting business in this Judicial District, certain of the  acts complained of herein occurred in this Judicial District.

## <u>BACKGROUND AND PATENTS-IN-SUIT</u>

21.   U.S. Patent No. 11,813,291 (the "'291 Patent", attached hereto as Exhibit A), entitled "Ready-To-Use Potassium Phosphates In Sodium Chloride Solutions", was duly and legally issued on November 14, 2023.

22. U.S. Patent No. 11,925,661 (the "'661 Patent", attached hereto as Exhibit B), entitled "Ready-To-Use Potassium Phosphates In Sodium Chloride Solutions", was duly and legally issued on March 12, 2024.

23. Nivagen is the sole and exclusive owner, by assignment, of the '291 and '661 Patents (collectively, "the Asserted Patents").

24. The earliest effective filing date for both Asserted Patents is October 12, 2020, and as of that date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

25. Claim 1 of the '291 Patent generally claims a ready-to-use potassium phosphate solution that comprises, among other things, potassium phosphate, sodium chloride, phosphorus and aluminum, and is capable of being intravenously administered to a patient. Claims 1, 11 and 17 are independent claims.

26. Claim 1 of the '661 Patent generally claims a ready-to-use potassium phosphate solution that comprises, among other things, potassium phosphate, sodium chloride, phosphorus and aluminum, and is capable of being intravenously administered to a patient. Claims 1, 11 and 17 are independent claims.

## **DECLARATORY JUDGMENT JURISDICTION**

27. The FDA approved the Amneal Product under NDA #21-8343, for POTASSIUM PHOSPHATES IN SODIUM CHLORIDE, 15MMOL/250ML and 22MEQ/250ML for intravenous injection. The FDA approved the NDA on July 26, 2024. The Amneal Product is in a ready-to-use intravenous bag, in 0.9% sodium chloride. The Amneal Product infringes or will infringe one or more claims of the patents-in-suit.

28.  Upon information and belief, and as alleged herein, a commercial launch of the Amneal Product would infringe, directly or indirectly, literally or under the doctrine of equivalents, at least claim 11 of the '291 Patent and at least claims 1, 11, and 17 of the '661 Patent.

29.  The facts alleged herein show that a substantial controversy exists between Plaintiff and Defendants, parties having adverse legal interests, regarding infringement of the Asserted Patents, and that this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## DEFENDANTS' INFRINGING PRODUCTS

30.  Upon information and belief, Defendants will act individually or in concert to make, sell, advertise, offer for sale, use, or otherwise provide infringing ready-to-use potassium phosphate injectable drug product.

31.  On or about June 5, 2024, APINC co-founder, co-CEO, and President, or his designee, presented at the Jefferies Healthcare Conference.  *See, e.g.*, 2024 Presentation, attached hereto as Exhibit C.  The presentation included information about APINC's finances, portfolio, and upcoming growth catalysts.  *Id*.

32.  On page 19 of the Presentation, APINC announced that it expected to obtain FDA approval for and then launch Potassium phosphate (IV bag) in 2024.  Ex. C, at 19 (highlighting added).



33. APINC's presentation states that its Potassium phosphate (IV bag) product will be an injectable Ready-To-Use (RTU) product. *Id*.



10

34. The footnote in the presentation defines RTU as a ready-to-use product:


**Potential high-value opportunities**
(1) RTU = Ready-to-use; (2) PFS = Prefilled Syringe; (3) MDV = Multiple-dose vial; (4) SDV = Single-dose vial; (5) BLA = Biologics License Application
Note: All trademarks are the property of their respective owners.

35. The potassium phosphate product is highlighted and color coded as a "potential high-value opportunities." *Id*.

36. The presentation states that its potassium phosphate product is a "505(b)(2) RTU product[]" indicating that Defendants collectively or individually filed or caused to be filed a 505(b)(2) application for the RTU Product mentioned in the Presentation (*id*.):

**2024:** 2 505(b)(2) RTU products:
FOCINVEZ™ (vial) and **Potassium phosphate** (IV bag), Exenatide pen injector, **Propofol emulsion,** Edaravone, Sodium phosphate, Labetalol, Nicardipine, Phytonadione

37. It is common knowledge that the 505(b)(2) designation refers to a New Drug Application filed under Section 505(b)(2) of the Food Drug Cosmetic Act, 21 U.S.C. 355(b)(2).

38. The Presentation also indicates that the potassium phosphate product will be launched in 2024.

39. The Presentation also indicates that the potassium phosphate product will be injectable:

 **Injectables**

40. The Defendants intended to obtain FDA approval of the potassium phosphate product to begin commercial marketing of the Amneal Product in 2024.

41.  On July 29, 2024, APINC (or other Defendants) issued a press release ("Press Release" attached hereto as Exhibit F) announcing that the Amneal Product was FDA approved. The Press Release further states that the product is a sterile, ready-to-use version and will be launched in the 3rd Quarter of 2024:

---

View All News →

Amneal Receives U.S. FDA Approval for Potassium Phosphates Injection IV Bags

**July 29, 2024**

*First presentation of preservative-free potassium phosphates in a single-dose IV infusion bag*

*Third 505(b)(2) injectable added this year – will launch in third quarter*

BRIDGEWATER, N.J.--(BUSINESS WIRE)-- Amneal Pharmaceuticals, Inc. (Nasdaq: AMRX) ("Amneal" or the "Company") today announced that it has received New Drug Application ("NDA") approval from the U.S. Food and Drug Administration (FDA) for its new presentation of potassium phosphates in 0.9% sodium chloride injection intravenous (IV) ready-to-use (RTU) bags. This sterile presentation reduces the compounding steps for clinicians typically required with administering the product.

---

42.  FDA regulation 21 C.F.R. §201.323 regulates the amount of aluminum content of large volume parenteral (LVP) drug products.

43.  Upon information and belief, the Amneal Product will comply with the regulation and other FDA guidance that require low levels of aluminum.

44.  The Amneal Product will contain less than 50 mcg/l of aluminum. The FDA approved label, in Section 11, states that, "[t]his product contains no more than 25 mcg/L of aluminum."

45.  Upon information and belief, because it is a ready-to-use injectable, the Amneal Product will be sterile.

46. Section 2.1 of the FDA approved label states that "Potassium Phosphates in Sodium Chloride Injection is for *intravenous infusion* into a central or peripheral vein. **No dilution of this product is required.**" Because no dilution is needed, this product is ready-to-use. Section 11 of the label also states that the product is "sterile, non-pyrogenic, ready-to-use diluted solution containing a mixture of monobasic potassium phosphate, USP and dibasic potassium phosphate, USP in 0.9% sodium chloride. No dilution is required before administration."

47. According to Section 11 of the FDA approved label, the pH of the Amneal Product is "5.8 to 7.2."

48. According to the FDA approved label, the content of potassium phosphates are:

Recommended Dosage
- This product contains phosphorus 15 mmol and potassium 22 mEq (phosphorus 0.06 mmol/mL and potassium 0.088 mEq/mL). (2.3)
- Monitor serum phosphorus, potassium, calcium and magnesium concentrations. (2.3)
- See full prescribing information for recommendations on initial or single dosing, repeated dosing, concentration and infusion rate. (2.1, 2.2, 2.3)

-----------------------**DOSAGE FORMS AND STRENGTHS**------------------
Injection:
- Phosphorus 15 mmol/250 mL (0.06 mmol/mL) and Potassium 22 mEq/250 mL (0.088 mEq/mL) clear, colorless solution filled in a single-dose intravenous infusion bag. (3)

49. Upon information and belief, because it is in a ready-to-use format, the Amneal Product contains sodium chloride to form a saline solution, has a pH within the claimed ranges, and contains the claimed amounts of potassium phosphates.

50. Because it will be in an IV bag, the Amneal Product will be in a flexible container because IV bags are flexible containers.

51. Therefore, upon information and belief, for claim 11 of the '291 patent, the Amneal Product will meet each claim limitation because the Amneal Product will be a sterile, ready-to-use

premixed product stored in a flexible polymeric container, wherein the pharmaceutical product comprises potassium phosphates in an aqueous sodium chloride solution containing (a) less than 50 mcg/L aluminum, (b) about 15 mmol/100 ml phosphorus, and (c) about 22 mEq/100 mL potassium.

52.    Similarly, the Amneal Product will meet each limitation of claims 1, 11, and 17 of the '661 patent because each of those claims requires the same elements: the Amneal Product will be a sterile, ready-to-use pre-mixed product stored in a flexible polymeric container, wherein the pharmaceutical product comprises a potassium phosphates in an aqueous sodium chloride solution containing (a) less than 50 mcg/L aluminum, (b) about 15 mmol/100 ml phosphorus, and (c) about 22 mEq/100 mL potassium.

53.    APINC is a publicly traded company on the NASDAQ stock exchange, trading under the symbol AMRX. APINC has an obligation to make truthful statements to the public, including investors. The Presentation, identified and attached hereto as Exhibit C, is a presentation created by APINC. The Presentation is publicly available on the APINC (and its subsidiaries) website

(here:                         https://investors.amneal.com/events-and-presentations/default.aspx):



54.  There is no reasonable dispute that Defendants sought FDA approval for a ready-to-use potassium phosphate drug product. Ex. C, at 19. Indeed, the FDA approved the Amneal Product under NDA #21-8343.

55.  Upon information and belief, Defendants took meaningful preparation to make, use, sell, import, or offer to sell the Amneal Product. Defendants also took meaningful, present, realistic, and concrete activities to apply for FDA approval using the 505(b)(2) pathway, pursued FDA approval of the drug application, advertised in an investor presentation that it is doing so, indicated that such approval and commercialization is expected to be high-value opportunity as early as 2024, and ultimately obtained FDA approval for the Amneal Product.

56.  Because the Presentation is dated June 5, 2024, and is assumed truthful and not misleading, upon information and belief, Defendants would have verified and validated the

information contained therein, including that the ready-to-use Amneal Product was on track for imminent FDA approval and commercialization.

57.  Upon information and belief, commercialization of the Amneal Product is imminent.

58.  The July 2024 Press Release states that because of the FDA approval, Defendants intend to launch the Amneal Product in the 3rd quarter of 2024.

59.  Upon information and belief, there is immediacy and imminent infringement because the Defendants have FDA approval and have stated that commercialization will occur in 2024.

60.  Defendants' Presentation identifies that commercial launch could happen in 2024 and is identified as a high-value opportunity. The Presentation and identification of a 2024 FDA approval and commercial launch shows that such activities were imminent. There is a substantial controversy between the Parties because of Defendants FDA approval of its infringing ready-to-use Product.

61.  Upon information and belief, Defendants, individually or jointly, will manufacture a drug product that will infringe the claims of the Asserted Patents or will cause another company (whether related to Defendants or not) to manufacture a drug product that will infringe the claims of the Asserted Patents.

62.  Upon information and belief, Defendants, individually or jointly, will import, cause the importation of, or cause another company (whether related to the Defendants or not) to import a drug product into the United States that will infringe the claims of the Asserted Patents.

63.  Upon information and belief, Defendants, through APNY, obtained FDA approval under NDA #21-2832 for potassium phosphates injection in vials on October 10, 2023. Defendants launched the product after obtaining FDA approval. This indicates that Defendants pursued FDA approval of drug products and then commercialized them.

64. Upon information and belief, because Defendants individually or collectively: (i) filed a 505(b)(2) application for potassium phosphates in a ready-to-use format; (ii) continued to seek FDA approval for the drug product; (iii) intended to obtain approval of the application to begin commercialization of the drug product; (iv) told investors that they expected to obtain FDA approval and commence launch activities in 2024; (v) consider the drug product to be a high value commercial opportunity; (vi) obtained FDA approval for the Amneal Product under NDA #21-8343; and (vii) issued a press release indicating that the Amneal Product will be launched in the 3rd quarter of 2024 — there is reasonable and imminent apprehension of patent infringement.

65. Upon information and belief, the Asserted Patents will be infringed by Defendants' activities.

66. Upon information and belief, Defendants will induce infringement of one or more claims of the Asserted Patents, and Defendants will directly infringe one or more claims of the Asserted Patents. Defendants will also knowingly induce infringement and possess the specific intent to encourage another's direct infringement.

67. Upon information and belief, Defendants sought FDA approval that permits Defendants to market the Amneal Product as a treatment for patients needing phosphorus replacement therapy by administering the Amneal Product to a patient in need thereof.

68. Per the FDA approved label for the Amneal Product, FDA approved the following indication:

---

**FULL PRESCRIBING INFORMATION**

**1   INDICATIONS AND USAGE**

Potassium Phosphates in Sodium Chloride Injection is indicated as a source of phosphorus to correct hypophosphatemia in adults and pediatric patients who weigh 40 kg or greater when oral or enteral replacement is not possible, insufficient, or contraindicated.

---

69.  Upon information and belief, Defendants will advertise to medical practitioners that its Amneal Product is FDA approved for phosphate replacement therapy. AMPVT obtained FDA approval for vial-form potassium phosphates injection for intravenous use, bearing NDC #'s 80830-1691-1, 80830-1691-2, 80830-1691-5, 80830-1692-1, 80830-1692-2, 80830-1692-5, 80830-1693-1,              80830-1693-3,              80830-1693-5              (here: https://dailymed.nlm.nih.gov/dailymed/drugInfo.cfm?setid=89136c51-a60b-4269-bd05-9489f060a734).  These vial form products are indicated for phosphorus replacement therapy:

**POTASSIUM PHOSPHATES- potassium phosphate, monobasic potassium phosphate, dibasic injection, solution, concentrate**
**Amneal Pharmaceuticals Private Limited**

----------

**HIGHLIGHTS OF PRESCRIBING INFORMATION**
**These highlights do not include all the information needed to use POTASSIUM PHOSPHATES INJECTION safely and effectively. See full prescribing information for POTASSIUM PHOSPHATES INJECTION.**

**POTASSIUM PHOSPHATES injection, for intravenous use**
**Initial U.S. Approval: 1983**
------------------------------------------ **INDICATIONS AND USAGE** ------------------------------------------
Potassium phosphates injection is a phosphorus replacement product indicated as a source of phosphorus:
- in intravenous fluids to correct hypophosphatemia in adults and pediatric patients when oral or enteral replacement is not possible, insufficient or contraindicated. (1)
- for parenteral nutrition in adults and pediatric patients when oral or enteral nutrition is not possible, insufficient or contraindicated. (1)

70.  Upon information and belief, Defendants will advertise the availability of the Amneal Product on the product catalog portion of the Amneal (APINC) website just like it does for other potassium products (https://amneal.quickbase.com/db/bqf4m6ppd?a=dbpage&pageID=7):



71.  Upon information and belief, Defendants will also advertise the availability of the Amneal Product by issuing press releases.

72.  The July 2024 Press Release indicates that the Amneal Product will be launched.

73.  On Jan. 17, 2024 Premier Inc. issued a press release which states that Premier Inc. through its ProvideGx program has partnered with Amneal Pharmaceuticals (among other companies), wherein either APINC or APLLC individually or jointly will supply potassium phosphate drug product to Premier (*see* https://premierinc.com/newsroom/press-releases/premier-inc-partners-with-leading-manufacturers-to-secure-the-supply-of-five-vital-medications):



74. Upon information and belief, Defendants, individually or collectively, will supply Premier Inc. with the Amneal Product.

75. The APINC website indicates that for certain products, the "products are marketed through skilled Specialty Sales & Marketing Teams, who call on neurologists, movement disorder specialists, endocrinologists and primary care physicians in key markets throughout the U.S." (https://amneal.com/products/our-portfolio/specialty-products/). Upon information and belief, Defendants will actively market the Amneal Product to physicians and induce those physicians to commit one or more acts of infringement.

76. Upon information and belief, the content of the press releases and the advertisement on the website demonstrate that Amneal (APINC) will use skilled Sales and Marketing teams to call on physicians, and/or product label will actively encourage physicians to prescribe the Amneal Product in directly infringing ways. Defendants have requisite knowledge and intent to induce that infringement.

77. The infringement will cause damage to Nivagen. As a result of Defendants' acts of infringement, Nivagen will suffer actual and consequential damages; however, Nivagen does not

yet know the full extent of the infringement and its extent cannot be ascertained except through discovery and special accounting. Nivagen seeks a declaratory judgment that Defendants' future activities will infringe the Asserted Patents. Nivagen further seeks any other damages to which Nivagen is entitled under law or in equity.



78. ████████████████████████████████

79. ████████████████████████████████████
████████████████████████████████████
████████████████.

80. ████████████████████████████████

81. ████████████████████████████████████
██████

82. ████████████████████████████████████
████████████████████████

83. The Defendants already market a vial form of the potassium phosphate injectable product under NDA #21-2832.

84. Nivagen will be irreparably harmed by Defendants' acts of infringement and will continue to be irreparably harmed unless and until Defendants' acts of infringement are enjoined by this Court. Nivagen has no adequate remedy at law to redress Defendants' continuing acts of infringement, and money damages will not suffice to remedy the harms to Nivagen. The hardships that would be imposed upon Defendants by an injunction are less than those faced by Nivagen should an injunction not issue. Furthermore, the public interest would be served by issuance of an injunction.

85.   Enjoining the launch of the Amneal Product will not prejudice patients because vial forms of the product already exist in the marketplace, including a vial form sold by the Defendants.

## COUNT 1 – DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 11,813,291

86.   Nivagen incorporates the above paragraphs by reference.

87.   This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

88.   There is an actual case or controversy such that the Court may entertain Nivagen's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

89.   On information and belief, Defendants, acting individually or jointly, imminently will make, use, sell, offer for sale, and/or import into the United States, the infringing potassium phosphate ready-to-use drug Amneal Product, either literally or under the doctrine of equivalents.

90.   On information and belief, Defendants thus will infringe at least claim 11 of the '291 Patent literally and/or under the doctrine of equivalents.

91.   On information and belief, Defendants will also imminently actively induce  the infringement of at least claim 11 of the '291 Patent in violation of 35 U.S.C. §271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as inducing another party, such as AMPVT, to manufacture the potassium phosphate product, market it to health care practitioners, advertise the product and its availability, create and/or distribute marketing and therapeutic materials, brochures, manuals, instructional documents, and/or similar materials with instructions on how to purchase the product, apply for reimbursement of it, and how to use it, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '291 Patent,

without license or authority from Nivagen. On information and belief, Defendants will knowingly and specifically intend that the induced acts constitute infringement of the '291 Patent.

92.   On information and belief, Defendants individually, collectively, or through others or intermediaries, will imminently contributorily infringe in violation of 35 U.S.C. §271(c), at least one claim of the '291 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '291 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '291 claims.

93.   On information and belief, Defendants monitor the status of patent applications relating to ready-to-use potassium phosphate injectable drug products and have therefore been on actual notice of the '291 Patent at least as early as its issuance.

94.   Despite having knowledge of the '291 patent, Defendants have not sought any permission, license, or otherwise from Nivagen, and therefore Defendants continued efforts to obtain FDA approval for and commercialize the Amneal Product is in reckless disregard to Nivagen's patent rights.

95.   As of the filing of the original Complaint (D.I. 1), Defendants are on notice of the '291 patent and Defendants continued efforts to obtain FDA approval for and commercialize the Product is in reckless disregard to Nivagen's patent rights.

96.   The commercial manufacture, importation, use, sale, or offer for sale of the Amneal Product in violation of Nivagen's patent rights will cause harm to Nivagen, for which damages are inadequate.

97.  Nivagen is entitled to a declaratory judgment that the future manufacture, use, offer for sale, sale and/or importation of the Amneal Product before patent expiration will constitute direct infringement of at least claim 11 of the '291 Patent under 35 U.S.C. §271(a).

**COUNT 2 – DECLARATORY JUDGMENT OF
INFRINGEMENT OF U.S. PATENT NO. 11,925,661**

98.  Nivagen incorporates the above paragraphs by reference.

99.  This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202.

100. There is an actual case or controversy such that the Court may entertain Nivagen's request for declaratory relief consistent with Article III of the United States Constitution, and that actual case or controversy requires a declaration of rights by this Court.

101. On information and belief, Defendants, acting individually or jointly, imminently will make, use, sell, offer for sale, and/or import into the United States, the infringing potassium phosphate ready-to-use drug Amneal Product, either literally or under the doctrine of equivalents.

102. On information and belief, Defendants thus will infringe at least claims 1, 11, and 17 of the '661 Patent literally and/or under the doctrine of equivalents.

103. On information and belief, Defendants will also imminently actively induce  the infringement of at least claims 1, 11, and 17 of the '661 Patent in violation of 35 U.S.C. §271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as inducing another party, such as AMPVT, to manufacture the potassium phosphate product, market it to health care practitioners, advertise the product and its availability, create and/or distribute marketing and therapeutic materials, brochures, manuals, instructional documents, and/or similar materials with instructions on how to purchase the product, apply for reimbursement of it, and how to use it, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of

the '661 patent, without license or authority from Nivagen. On information and belief, Defendants will knowingly and specifically intend that the induced acts constitute infringement of the '661 Patent.

104. On information and belief, Defendants individually, collectively, or through others or intermediaries, will imminently contributorily infringe in violation of 35 U.S.C. §271(c), at least one claim of the '661 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '661 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '661 claims.

105. On information and belief, Defendants monitor the status of patent applications relating to ready-to-use potassium phosphate injectable drug products and have therefore been on actual notice of the '661 Patent at least as early as its issuance.

106. Despite having knowledge of the '661 patent, Defendants have not sought any permission, license, or otherwise from Nivagen, and therefore Defendants continued efforts to obtain FDA approval for and commercialize the Amneal Product is in reckless disregard to Nivagen's patent rights.

107. As of the filing of the original Complaint (D.I. 1), Defendants are on notice of the '661 patent and Defendants continued efforts to obtain FDA approval for and commercialize the Amneal Product is in reckless disregard to Nivagen's patent rights.

108. The commercial manufacture, importation, use, sale, or offer for sale of the Amneal Product in violation of Nivagen's patent rights will cause harm to Nivagen, for which damages are inadequate.

109. Nivagen is entitled to a declaratory judgment that the future manufacture, use, offer for sale, sale and/or importation of the Amneal Product before patent expiration will constitute direct infringement of at least claims 1, 11, and 17 of the '661 Patent under 35 U.S.C. §271(a).

## PRAYER FOR RELIEF

WHEREFORE, Nivagen respectfully requests the Court enter judgment against Defendants as follows:

1. Declaring that Defendants have individually or collectively infringed or will individually or collectively infringe the Asserted Patents;

2. Awarding Nivagen its costs, reasonable attorneys' fees, expenses, and interest;

3. Awarding any injunctive relief, including removal of the Amneal Product from the market by enjoining its importation, sale, and distribution in the United States; and

4. Granting Nivagen such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ Bindu A. Palapura*
    Bindu A. Palapura (#5730)

Shashank Upadhye
Yixin H. Tang
Brent Batzer
UPADHYE TANG LLP
109 Symonds Dr. #174
Hinsdale, IL 60522
Tel: (312) 327-3326

    Andrew M. Moshos (#6685)
    Malisa C. Dang (#7187)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    Tel: (302) 984-6000
    bpalapura@potteranderson.com
    amoshos@potteranderson.com
    mdang@potteranderson.com

Dated: August 9, 2024
11692610 / 23316.00002

Public Version Dated: August 16, 2024

*Attorneys for Plaintiff Nivagen Pharmaceuticals, Inc.*

27